UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION
Case No. _____

| | | |
|---|---|---|
| SPARKLE TATE  f/k/a | ) | |
| SPARKLE COTTON, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| vs. | ) | |
| | ) | |
| RAINES HOSPITALITY, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

COMES NOW, the Plaintiff, SPARKLE TATE, f/k/a SPARKLE COTTON, by and through undersigned counsel, who alleges and says unto this Honorable Court the following:

**INTRODUCTION**

1.    This is an action seeking declaratory judgment, equitable relief, compensatory and punitive damages, costs, and attorney's fees for discrimination and retaliation and failure to adhere to the payment of wages act and FMLA, all in violation of the following:

A.    Title VII of the Civil Rights Act of 1964, as amended, §701 et. seq., 42 U.S.C. §2000e et seq.; along with 1991 Civil Rights Act, *as amended* , ("Title VII") – Race Discrimination, and Retaliation.

B.    Family and Medical Leave Act 29 U.S.C.§ 2611(2)(a)(i)(ii) ("FMLA").

C.     SC Payment of Wages Act , SC Code § 41-10-10, *et seq*. ("ASCPWA").

## JURISDICTION AND VENUE

2.    Jurisdiction and Supplemental Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and 1343(4) and 1367, and 42 USC §2000e-5(f).

3.    Pursuant to 28 U.S.C. §1391, venue is properly laid in this district because Defendant conducts substantial, systematic, and continuous activity in this district and the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of South Carolina, Florence Division.

4.    On  April 21, 2025, the Equal Employment Opportunity Commission issued Plaintiff a notice, regarding her charge number 436-2025-01566,  informing her of her right to sue defendant in response to her charge of discrimination on the basis of race and retaliation all in violation of Title VII.

5.    Plaintiff has complied fully with all prerequisites and conditions precedent to the institution of this lawsuit.

## FACTUAL  ALLEGATIONS

6.    Plaintiff was subjected to discrimination based on race and retaliation by Defendants, their representatives and agents.

7.    Compensatory and punitive damages are both sought pursuant to the 1991 Civil Rights Act, et seq., as amended, as well as the 1964 Civil Rights Act, Title VII of the

1964 Civil Rights Acts, Section 704(a), et seq. and Section 703(a) et seq. of the said Act. Under FMLA, compensatory damages are sought pursuant to 29 U.S.C. §2617(a)(1)(A),(B).

8.   Furthermore, Plaintiff seeks attorney's fees for the bringing of this action pursuant to the 1976 Civil Rights Attorney's Fees Act, 29 U.S.C. §2617 and other appropriate attorney fees statutes authorized by law.

9.   Plaintiff is an African American female resident of Florence, South Carolina.

10.  Plaintiff is informed and believes that Defendant, Raines Hospitality, Inc., is a multifaceted hospitality organization that owns, develops and operates hotel brands.

11.  Defendant is an employer within the meaning of 42 U.S.C. §2000e-(b), because it is engaged in an industry affecting commerce, who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

12.  Defendant is an employer within the meaning of the Family Medical Leave Act, 29 U.S.C. §2611, engaged in commerce or in any industry affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks.

13.  Plaintiff as a former employee of Defendant, worked for a covered employer with more than 50 employees, worked for at least 12 months, and had at least 1250 hours of service during the 12 month period preceding his medical leave of absence. Plaintiff was an eligible employee within the meaning of the Family Medical Leave Act, , 29 U.S.C. §2611.

3

14.     The South Carolina Payment of Wages Act applies to Defendant as an employer located in South Carolina with at least five employees.

## STATEMENT OF FACTS

15.     Plaintiff, Sparkle Tate, was employed with Defendant Raines Hospitality from 2012-2025, when she was terminated after complaining of discrimination and after missing work for FMLA eligible reasons.

16.     Plaintiff worked for Defendant Raines Hospitality satisfactorily, as she was promoted from Front Desk Associate at the time of hire, to General Manager, at the time of termination.

17.     In 2024, Plaintiff was employed as General Manager of two properties when she was informed without warning on November 19, 2024 that she would be demoted to General Manager of one property with a corresponding decrease in pay by $5,000.

18.     Plaintiff was not given any written notice of the change in pay or demotion.

19.     Prior to the date of demotion, Plaintiff had never been issued any formal discipline to include any write up, suspension or performance improvement plan.

20.     When Plaintiff was demoted, she learned that her replacement was a Caucasian employee of Defendant who worked at the Charleston property, but her position ended due to contract termination.  Plaintiff was then demoted in favor of Plaintiff's replacement being assigned to the position.

4

21.  Plaintiff inquired with the Regional Director of Operations as to why Plaintiff was being demoted; and Plaintiff specifically contested on November 21, 2024, her demotion in favor of her Caucasian coworker.

22.  After engaging in this protected activity of contesting the discrimination, Defendant, for the first time since employment in 2012, began accusing Plaintiff of performance issues and underperformance and issued Plaintiff a Performance Improvement Plan.

23.  Defendant also accused Plaintiff of having excessive absences while also acknowledging that Plaintiff's absences or intermittent leave was directly related to the care of a family member with a serious medical condition.

24.  Plaintiff filed a discrimination claim with the EEOC on April 4, 2025.

25.  On April 21, 2025, the Equal Employment Opportunity Commission issued Plaintiff a notice, regarding her charge number 436-2025-01566, informing her of her right to sue defendant in response to her charge of discrimination on the basis of race and retaliation all in violation of Title VII. A copy of that notice was mailed to Defendant.

26.  On April 25, 2025, Plaintiff's counsel sent a Notice of Intent to Sue to Plaintiff's employer.

27.  In response to that protected activity, Defendant made an additional overt effort to justify its discrimination and retaliation of Plaintiff, when the VP of Operations, in an unusual move, participated in a revenue call for Plaintiff in order to make accusations regarding Plaintiff's performance.

28. Plaintiff responded to the false allegations in that revenue call on May 12, 2025, in which she clarified the misstatements or provided context and stated that she believed the inclusion of her supervisor, their supervisor and the head of HR in the revenue call discussion was unusual and that this unusual behavior appeared to be retaliatory with respect to her legal matters.

29. Defendant terminated Plaintiff on May 21, 2025, and represented to the SC Department of Employment and Workforce that Plaintiff was terminated for employment concerns of underperformance and attendance.

30. Specifically, representative of Defendant all confirmed in the unemployment hearing that Plaintiff had received bonuses throughout the year, had not received prior discipline before demotion, and that they were aware Plaintiff's absences were related to the serious medical condition of Plaintiff's mother.

31. Absences are approved through an electronic system. When Plaintiff began 2025, in January she had 192 hours of PTO and had 91 hours remaining at termination, which proves she could not have had excessive or unapproved absences.

32. When Plaintiff was terminated, she was given a final paycheck that paid her PTO for May 19 and May 20, but Defendant did not compensate her for May 21 from 8:30 am - 11:00 am, the period of time she worked before being terminated.

33. Defendant did not compensate Plaintiff with her April 2025 earned bonus.

34. Plaintiff, through counsel, made a request for the lost wages on June 7, 2025; and to date, Defendant refuses to provide compensation or explanation as to why the sums requested are not owed to Plaintiff, as well as any accrued and unused PTO.

6

35. Two other African American employees were terminated without good cause: a GM and a Sales Manager.

36. Defendant cannot articulate a legitimate business reason for the discriminatory and retaliatory treatment of Plaintiff, to include demotion, failure to offer FMLA protection, discipline, and refusal to pay wages due.

37. Defendant's facially neutral policies and procedures were applied in a discriminatory and retaliatory manner that was improper and violated Defendant's own practice and standards, and in a manner which had a disparate impact on Plaintiff.

38. As a result of the acts of discrimination and retaliation within Defendant's employment practices and work environment, Plaintiff has suffered loss of employment position, compensatory damage, emotional and financial distress, as well as harm to her personal and professional reputation and loss of prospective employment relationships.

## COUNT I
## (TITLE VII VIOLATION – Race and Retaliation)

39. Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs of this Complaint.

40. Plaintiff, a black female employee of Defendant, was performing satisfactorily and was not under the threat of probation, suspension or termination before she was removed from her position in November 2024 so that a Caucasian coworker could take her position.

41.     Plaintiff had been promoted within the company from 2012 - 2025 and did not have a record of formal discipline and received bonuses regularly.

42.     Defendant demoted Plaintiff without warning and without legitimate justification in November 2024 to replace Plaintiff with a Caucasian employee who lost her position as GM of a property in Charleston.

43.     Plaintiff inquired with Defendant about the demotion in favor of her Caucasian coworker and after this inquiry, was placed on a PIP for the first time ever.

44.     Plaintiff engaged in protected activity of filing an EEOC complaint and obtaining a Notice of Right to Sue, which informed Defendant of Plaintiff's protected activity.

45.     Plaintiff appealed to Defendant regarding the discrimination and retaliation seeking resolution.

46.     Defendant began to find further fault with Plaintiff's work performance, to which Plaintiff responded in an email May 12, 2025, that the admonishing email was unusual and appeared retaliatory.

47.     Defendant promptly terminated Plaintiff May 21, 2025, shortly after her protected activity of emailing Defendant about retaliation.

48.     Defendant knew or should have known that Plaintiff engaged in protected activity.

49.     Defendant then retaliated against Plaintiff by making attempts to discipline and terminate.

50.     Defendant also retaliated against Plaintiff by refusing to pay proper wages due to Plaintiff to include PTO, bonuses, reimbursement and regular wages for the last day of work.

51.  The foregoing actions of Defendant and its representatives discriminated on the basis of race and retaliated against Plaintiff all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2.

52.  Plaintiff has suffered injury, including immediate and irreparable injury as described in the statement of facts, as a direct and proximate result of the Defendant's violation of all said rights as alleged herein.


**COUNT II**
**(SC PAYMENT OF WAGES ACT**
**VIOLATIONS OF § 41-10-20, ET SEQ.)**

53.  Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs of this Complaint.

54.  Defendant is an employer subject to the mandates of SC Payment of Wages Act.

55.  Plaintiff was an employee of Defendant who worked on May 21, 2025 from 8:30 am - 11:00 am before Defendant terminated her.

56.  Plaintiff earned bonuses up until May 21, 2025 when Defendant terminated her. Plaintiff had been receiving bonuses before termination.

57.  Plaintiff was entitled to a 2025 Marriot Reimbursement per company policy.

58.  Plaintiff has earned PTO which went unused.

59.  Plaintiff was notified of her demotion in November 2024 verbally, and Defendant failed to notify Plaintiff of the change in the terms and conditions of employment in writing within 7 days. That by failing to notify Plaintiff in advance of a change in

wages, and by refusing to pay wages when due, the Defendant is in violation of § 41-10-30, et seq.

60.  Defendant was notified that Plaintiff still had wages due her that were not paid within forty-eight (48) hours or on the next regularly scheduled pay date that is not in excess of thirty (30) days from the date of termination pursuant to the SC Payment of Wages Act  § 41-10-50.

61.  The wages Plaintiff requested in writing via letter June 7 are wages earned by Plaintiff and not in dispute. The defendant's aforementioned refusal is without cause and in bad faith.

62.  To date Defendant has failed to pay Plaintiff her proper wages due, and because the wages are not in dispute, Plaintiff is entitled to treble damages and attorney fees. Pursuant SC Payment of Wages Act § 41-10-20, et seq.


**COUNT III**
**(FAMILY MEDICAL LEAVE ACT**
**VIOLATIONS OF 29 U.S.C.§ 2611 )**

63.  Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs of this Complaint.

64.  Plaintiff  was an eligible employee under the definitional terms of the Family and Medical Leave Act, 29 U.S.C. § 2611(2)(a)(i)(ii).

65.  At the time of the need for leave, Plaintiff, who had been employed since 2012 had been employed by Defendant for at least twelve (12) months and worked full time.

66.    Further, Plaintiff had worked at least 1,250 hours for Defendant during the twelve (12) months prior to the intermittent times she needed for leave to care for her mother.

67.    Defendant employed in excess of 50 employees within 75 miles of the location where Plaintiff worked.

68.    Plaintiff was entitled to receive FMLA leave and receive notices and compensation pursuant to the FMLA; and Defendant was not permitted to interfere or retaliate against Plaintiff for exercising his rights under the FMLA.

69.    Defendant has admitted in the unemployment hearings under oath that Defendant was aware of Plaintiff's need for leave due to the serious health condition of her mother and that Defendant terminated Plaintiff for those health related absences.

70.    When the employer "acquires knowledge" that an employee's leave may be for an FMLA- qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days. 29 C.F.R. §825.300(b)(1).

71.    Furthermore Plaintiff did not need to apply for FMLA to protected by FMLA. "[T]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." 29 C.F.R. § 825.303(b).

72.    Defendant interfered with Plaintiff's medical leave by failing to consider Plaintiff's leave as FMLA qualifying and invoking protection.

73.    Defendant retaliated against Plaintiff for invoking his FMLA rights by terminating Plaintiff at the conclusion of his FMLA leave.

74. Defendant's policies and improper or unreasonable discipline interfered with Plaintiff's FMLA rights because it interfered with Plaintiff's right to FMLA job protection without disciplinary action and Plaintiff's FMLA right to be protected for conduct occurring as a result of FMLA triggering events.

75. Defendant's retaliatory actions and interference violations constitute unlawful acts under FMLA pursuant to 29 U.S.C. §2615(a)(2).

76. Plaintiff is suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's interference practices in violation of 29 U.S.C. § 2915(a)(1), unless and until this Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

A. Award Plaintiff costs of this action, together with reasonable attorney's fees as provided by 42 U.S.C. §12205 and 42 U.S.C. §12117; under 42, U.S.C. §2000e-5(k), 29 U.S.C.A. § 2617(a)(3),  SC Code Ann. § 41-10-80(c).;

B. Direct Defendant to pay Plaintiff compensatory damages; damages for her emotional distress, mental anguish and humiliation; and other compensatory and punitive damages allowable under 2 U.S.C. §1311(b)(3) and 42 U.S.C. §12117(a) 29 U.S.C.A. § 2617(a)(1)(A)(i) and 29 U.S.C.A. §§ 2617(a)(1)(A)(ii) and (a)(1)(B), SC Code Ann. § 41-10-80(c) in the amount to be determined by a jury;

C. Additional liquidated damages in the amount of the above-requested award, pursuant to 29 U.S.C.A. § 2617(a)(1)(A)(iii); and,

D.    Award Plaintiff such other and further relief as this Court deems just and proper.

WUKELA LAW FIRM

By:    s/ Pheobe A. Clark
**Pheobe A. Clark**, Federal ID No. 9888
Post Office Box 13057
Florence, SC   29504-3057
Phone: (843) 669-5634
Fax:   (843)669-5150)
Email:   pclark@wukelalaw.com

July 18, 2025